# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 28, 2023

Lyle W. Cayce
Clerk

———————

No. 22-20113

———————

Dionne A. Montague,

*Plaintiff—Appellant,*

*versus*

United States Postal Service,

*Defendant—Appellee.*

———————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CV-4329

———————————————————

Before Jones, Southwick, and Ho, *Circuit Judges.*

James C. Ho, *Circuit Judge:*[*]

Many federal civil rights laws prohibit discrimination of various kinds. But for certain classifications—namely, religion and disability—Congress requires more. Employers must affirmatively provide "reasonable accommodations" to people of faith and the disabled. *See, e.g.*, 42 U.S.C. § 2000e(j) (Title VII of the 1964 Civil Rights Act); 42 U.S.C. § 12112(b)(5)(A) (Americans with Disabilities Act); 42 U.S.C. § 12133

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-20113

(Rehabilitation Act). This requirement no doubt imposes costs on employers. But it's a legislative policy judgment that we are duty-bound to implement.

In this case, we must determine whether an employee may request to work from home in the mornings, and at the office in the afternoons, as an accommodation for her disability. In particular, we must decide whether the record here is sufficient to warrant trial rather than summary judgment.

It's often said that 90% of life is showing up. But the right number no doubt varies from job to job. It may be reasonable to work part of the day at home for some jobs—but not for others. The correct answer turns on the nature of the job and the facts of the case. In this case, we conclude that genuine fact disputes preclude the grant of summary judgment to the employer. *See*, *e.g.*, *Groff v. DeJoy*, 35 F.4th 162, 176 (3rd Cir. 2022) (Hardiman, J., dissenting) ("without more facts," summary judgment should be reversed and religious accommodation claim should be remanded for trial), *cert. granted*, _ U.S. _ (2023). The district court held otherwise, so we accordingly reverse.

## I.

Dionne Montague worked as a Communication Programs Specialist—a public relations employee—for the United States Postal Service in the Houston area from 2009 to 2017. As her neurologist has explained, Montague suffers from peripheral neuropathy, a nerve condition that often flares up in the morning. But she can drive to the office in the afternoon. So she asked the Postal Service to let her to work mornings from home as needed and report to the office each afternoon.

The Postal Service denied her request, prompting this claim for failure to accommodate in violation of the Rehabilitation Act. *See* 29 U.S.C. § 794(a) (prohibiting disability discrimination by the Postal Service); *Smith v. Harris*

No. 22-20113

*County*, 956 F.3d 311, 317 (5th Cir. 2020) ("[T]he Rehabilitation Act . . . impose[s] upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals.") (cleaned up).

The Postal Service stipulated that Montague stated a disability for purposes of the Rehabilitation Act. But it maintained that her requested accommodation was not reasonable.

The district court found that driving and travel were essential to Montague's job. So it concluded that Montague's requested accommodation of work-from-home in the mornings was unreasonable. The district court therefore granted summary judgment to the Postal Service.

We review de novo, "viewing all facts and evidence in the light most favorable to" Montague. *EEOC v. LHC Group, Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (cleaned up). Summary judgment is appropriate only if the Postal Service "shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).

## II.

This case turns on whether it's reasonable, given the particulars of her job, for Montague to work from home in the mornings as needed, and at the office in the afternoons.[1]

---

[1] We note that the circuits are split on whether the commute to and from the workplace is subject to federal disability statutes. *Compare Lyons v. Legal Aid Society*, 68 F.3d 1512, 1517 (2nd Cir. 1995) (federal law "requir[es] an employer to furnish an otherwise qualified disabled employee with assistance related to her ability to get to work"), *and Colwell v. Rite Aid Corp.*, 602 F.3d 495, 504 (3rd Cir. 2010) (same), *with Regan v. Faurecia Automotive Seating, Inc.*, 679 F.3d 475, 480 (6th Cir. 2012) (federal law "does not require an employer to accommodate an employee's commute"), *and Unrein v. PHC-Fort Morgan, Inc.*, 993 F.3d 873, 878 (10th Cir. 2021) (same).

We do not take sides in this circuit split, because the Postal Service forfeited the argument. *See, e.g.*, *Helix Energy Solutions Group, Inc. v. Hewitt*, 143 S. Ct. 677, 685 (2023)

No. 22-20113

A proposed accommodation is not reasonable if it "fundamentally alter[s] the nature of the service, program, or activity." *Cadena v. El Paso County*, 946 F.3d 717, 724 (5th Cir. 2020). And "a job is fundamentally altered if an essential function is removed." *Credeur v. Louisiana*, 860 F.3d 785, 792 (5th Cir. 2017) (cleaned up).

Whether a requested accommodation would fundamentally alter a particular job is generally a fact determination. As we've explained, "[f]act-finders must determine whether a function is 'essential' on a case-by-case basis." *Id.* (quoting *LHC Group*, 773 F.3d at 698).

Under circuit precedent, "seven non-exhaustive factors . . . guide the essential-function inquiry." *Id.* These factors are: (1) "[t]he employer's judgment," (2) "[w]ritten job descriptions," (3) "[t]he amount of time spent . . . performing the function," (4) "[t]he consequences of not requiring the incumbent to perform the function," (5) "[t]he terms of a collective bargaining agreement," (6) "[t]he work experience of past incumbents," and (7) "[t]he current work experience of incumbents in similar jobs." *Id.* Applying these factors here, we conclude that the district court should have denied summary judgment to the Postal Service. *See, e.g., Riel v. Electronic Data Systems Corp.*, 99 F.3d 678, 682–83 (5th Cir. 1996) (listing these factors and describing a fact dispute that the employer and employee had about some of these factors); *id.* at 683 ("Given the dispute as to this material fact, [the employee] is entitled to present his evidence to a jury.").

The central disagreement between Montague and the Postal Service is whether travel and mornings at the office were essential to her job, thus making it unreasonable for her to work from home in the morning. Applying

---

("[The defendant] did not raise that argument . . . . Following our usual practice, we therefore decline to address its merits.").

No. 22-20113

the governing "essential function" factors to the summary judgment record presented here, we conclude that this case presents genuine disputes of material fact that must be decided by a fact-finder.

## A.

To begin with, Montague raises a genuine fact question about whether travel was essential. She argues that travel could not have been an essential function of her job because her time spent on travel in the past was minimal. *See Credeur*, 860 F.3d at 792 ("amount of time spent on the job performing the function" can determine whether that function is essential). The Postal Service's own documents indicate that Montague traveled just twice in 2013, twice in 2014, and three times in 2015.

Montague's supervisor, Polly Gibbs, noted that the job "sometimes" involved travel within the Houston area, where Montague lived and worked. But the summary judgment record permits the inference that Montague could have performed that aspect of the job by traveling locally during the afternoon. *Cf.* 42 U.S.C. § 12111(9)(B) ("The term 'reasonable accommodation' may include . . . job restructuring, . . . or modified work schedules . . . ."). There is no evidence in the record that Montague was required to attend events in the morning, and the Postal Service does not point to any.

Our precedents also require us to take into account the fact that Montague's written job description does not mention travel as an essential part of her job. *See Credeur*, 860 F.3d at 792 ("[w]ritten job descriptions" determine if job function is essential). Her job description mentions "gathering, writing, editing and disseminating a wide variety of information." It nowhere refers to driving or travel as a job requirement. We have previously found a genuine dispute of material fact even where the job description specifically mentions travel. *See LHC Group*, 773 F.3d at 698

No. 22-20113

("[B]ecause the record contains evidence that traveling was not as prominent a part of a Team Leader's duties as the position description suggests . . . there is a genuine dispute of material fact as to whether driving was an essential function of that position."). We likewise find a genuine dispute of material fact here.

## B.

Montague also presents a genuine fact dispute over whether her job requires her to be in the office in the mornings as well as the afternoons. She does so by invoking the experience of two of her colleagues: fellow Communication Programs Specialists McKinney Boyd and Stephen Seewoester.

Boyd worked in the Dallas and Louisiana districts of the Postal Service for over two decades. Seewoester served the Arkansas, Albuquerque, Fort Worth, Gulf Atlantic, and Rio Grande districts at various points spanning nearly two decades.

Montague was the only Communication Programs Specialist assigned to Houston. So Boyd and Seewoester provide relevant evidence about the nature of her position. They reported to the same supervisor as Montague. And the Postal Service employed only six Communication Programs Specialists throughout the South, including Montague.

Boyd held the same position at the same time as Montague, during the period at issue in this case. *See Riel*, 99 F.3d at 683 (contemporary "work experience of incumbents" can determine if job function is essential). He also served as a substitute for Montague at various points during her tenure. His sworn statement notes that "telecommuting was part of [his] weekly schedule." In his experience, a Communication Programs Specialist "can effectively manage a postal district[] by telephone and electronic

No. 22-20113

communication." Accordingly, Boyd came into the office only four days a week, and worked the remaining day at home.

Similarly, Seewoester "[f]or 19+ years . . . conducted [his] daily duties remotely" at all times, not just in the mornings. As his affidavit explained, "[u]sing electronic communication . . . [he] was able to successfully complete all the requirements of [his] position." Seewoester left his position in 2014, prior to the period at issue in this appeal. But he is a "past incumbent[]," so his work experience is relevant to our analysis. *Credeuer*, 860 F.3d at 792.

Considering the experience of Boyd and Seewoester, a jury could find that it was reasonable for Montague to do her job at home in the mornings.

### III.

The Postal Service not only denies that Montague's requested accommodation is reasonable—it also claims that it offered alternative accommodations that should have been sufficient. After all, an employee has "a right to reasonable accommodation, not to the employee's preferred accommodation." *EEOC v. Agro Distribution, LLC*, 555 F.3d 462, 471 (5th Cir. 2009). But the reasonableness of the Postal Service's suggested alternatives also presents a fact dispute under this summary judgment record.

The Postal Service suggested two potential alternatives to Montague: her husband could drive her to the office, or she could hire a taxi to take her to the office each day. But Montague maintains that these were not reasonable alternatives. She explained that her husband could not drive her every morning because his own commute required him to leave hours before Montague's job began each morning. And his work schedule often took him away from home. She also noted that she could not afford to take a taxi every day, and that the Postal Service never offered to reimburse her taxi

No. 22-20113

expenses.[2] Based on this summary judgment evidence, a jury could conclude that the alternatives suggested by the Postal Service were not reasonable.[3]

Montague also raises a factual question as to whether the Postal Service offered its alternative accommodations in good faith. *See Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999) ("[W]hen an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the [law]."). According to Montague, members of the Postal Service reasonable accommodation committee "began mocking [her] and used derogatory statements, showing true contempt toward [her]." A jury could choose to credit Montague's testimony and accept her argument that the Postal Service demonstrated "an unwillingness to conduct the interactive and reasonable accommodation process in good faith."

\* \* \*

Our precedent recognizes the "general consensus among courts . . . that regular work-site attendance is an essential function of most jobs." *Credeur*, 860 F.3d at 793. But a jury could conclude that the accommodation

---

[2] Employing a car service to get to and from work every day would impose a meaningful cost on Montague. The Postal Service does not contend otherwise, and for good reason. A simple illustration should suffice: If a car service would have cost Montague, say, an additional $10 per ride, twice a day, five days a week, for fifty weeks each year, the total annual cost would amount to something like $5,000. Moreover, nothing in the record indicates that drivers have to pay for parking in the suburban part of the Houston area at issue here. So there's no reason to think that hiring a car service would have saved Montague money on parking. In any event, these are all issues that the parties are entitled to contest on remand.

[3] In *LHC Group*, we noted the possibility that "a taxi or van service" might constitute a reasonable accommodation. 773 F.3d at 699. But we concluded that it was a fact issue for a jury to determine. *Id.* And whether a taxi or van service might have been a reasonable accommodation for the employee in *LHC Group* does not dictate whether it would be a reasonable accommodation for Montague.

No. 22-20113

sought by Montague is consistent with that principle:  She sought to work from home in the morning—and at her worksite every afternoon.  Whether that's a reasonable request is for a fact-finder to decide, considering the evidence available in the summary judgment record.

We reverse the grant of summary judgment to the Postal Service and remand for proceedings consistent with this opinion.[4]

_____

[4] The district court granted summary judgment to the Postal Service on Montague's disability discrimination claim, but it did not discuss or even mention her separate claim for constructive discharge. *See Montague v. United States Postal Service*, No. CV H-20-4329, 2022 WL 35825, at *1–*3 (S.D. Tex. Jan. 4, 2022).  On remand, the district court should therefore analyze this constructive discharge claim in the first instance.

No. 22-20113

No. 22-20113, *Montague v. USPS*

Edith H. Jones, *Circuit Judge*, dissenting:

With due respect, I would affirm the district court's judgment. Having closely reviewed the record in light of governing Rehabilitation Act law and precedents, I do not believe Montague established genuine issues of material fact sufficient to withstand summary judgment. A plaintiff bears the burden of proving the reasonableness of an accommodation in her prima facie case. *Smith v Harris Cnty.*, 956 F.3d 311, 317 (5th Cir. 2020). Further, an employer is free to choose the less expensive accommodation or the accommodation that is easier for it to provide. *Thompson v. Microsoft Corp.*, 2 F.4th 469 (5th Cir. 2021). Applying these principles to the facts, Montague did not create triable issues about whether travel was an essential job function of a Communications Program Specialist, nor about the reasonableness of the USPS suggestions that she either rely on her husband or use a car service like Uber to travel 700 yards to her office. The employer may insist that employees work in its office, rendering Montague's request to work from home, either every morning or on an "as-needed basis," an extraordinary accommodation that should require extraordinary justification. I find none here.

As the majority note, the employer may decide what job functions are essential, and these need not be written down. Though travel was not mentioned in Montague's written description, her supervisor attested to the need to travel within Houston for public events and occasionally out of town. Montague's suggestion that CPS employees from other districts could substitute for her on out-of-town travel would impose unreasonable costs on USPS, and her suggestion that public events could be adjusted to afternoons is counterintuitive and unreasonable. The affidavits of retired CPS employees are also insufficiently probative because each of them admits the

No. 22-20113

necessity of occasional travel for the job.  And Montague conceded that Mr. Boyd, who handled two districts "remotely," still worked in an office except when the USPS expressly permitted teleworking.

Here, USPS failed to argue that it has no obligation under federal disability law to facilitate or accommodate an employee's commuting to work.  That important issue is sidelined.  But even accepting Montague's premise arguendo, the employer's suggestion that she could "Uber" to work should be held reasonable as a matter of law.  The distance was less than a half mile!  Her only complaint was that it would cost too much, but she offered no evidence to support this claim.  Since a large proportion of commuters in and around Houston regularly bear the growing costs of tolls and parking in addition to operating their cars, Montague's objection is frivolous without further support.  She does not contend that commuting with an "Uber" service would not offset the physical symptoms she experiences from medication, and the medication is intended to control her symptoms of diabetic neuropathy.

In sum, while I agree with the law as expounded by the majority, I differ in its application to the facts at hand and respectfully dissent.